**In re Peter W. WASSERMAN, Debtor.**

**In re Sharon M. CERNY, Debtor.**

**Bankruptcy No. 90–13034–JNG.**

United States Bankruptcy Court,
D. Massachusetts.

July 23, 1992.

Peter J. Haley, Gordon & Wise, Boston, Mass., for debtors.

Joan N. Feeney, Hanify & King, Boston, Mass., for creditor.

## MEMORANDUM

JAMES A. GOODMAN, Bankruptcy Judge.

The above-captioned cases were commenced by the filing of voluntary petitions under Chapter 11 by Peter W. Wasserman and Sharon Cerny (the "Debtors") on June 11, 1990 and July 23, 1990, respectively. The cases were substantively consolidated by an order of the Court dated May 2, 1991.

On January 16, 1992, the Debtors filed an Opposition to the Claim of the City of Cambridge For Real Property Taxes and Motion to Determine Real Property Taxes in Accordance with 11 U.S.C. § 505 with respect to taxes due and owing on the properties collectively known as Porter Exchange. The City of Cambridge (the "City") responded to the Debtors' Opposition.

The issue before the Court is the rate of interest applicable to the oversecured tax claim of the City of Cambridge (the "City"). The Debtors say the applicable rate is the federal judgment rate of 4.58%. *See* 28 U.S.C. § 1961. The City says the applicable rate is the statutory one of 16%. *See* Mass.Gen.Laws Ann. ch. 60, § 62 (West 1988). The Decision by the United States Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), resolved the issue of whether the holder of an oversecured, nonconsensual lien is entitled to interest under 11 U.S.C. § 506(b). However, the decision did not address the issue of applicable rate of interest.

The Debtor relies upon two cases originating in the western district of Texas, *In re Laymon,* 117 B.R. 856 (Bankr.W.D.Tex. 1990), *rev'd,* 958 F.2d 72 (5th Cir.1992), *reh'g denied,* 964 F.2d 1145 (5th Cir.1992),

and *In re Kelton,* 137 B.R. 18 (Bkrtcy. W.D.Tex.1992). It also observes that its confirmed plan of reorganization creates a trust for unsecured creditors through which they will receive all available cash flow from the Porter Exchange beyond that necessary to pay taxes and debt service to the first mortgagee.[1]

In *In re Laymon,* 958 F.2d 72 (5th Cir. 1992), *reh'g denied,* 964 F.2d 1145 (5th Cir.1992), the Court of Appeals for the Fifth Circuit reversed decisions by the bankruptcy and district courts awarding an oversecured creditor post-petition interest at the federal judgment interest rate rather than the contractual default rate. The Fifth Circuit ruled that the bankruptcy court misinterpreted *Ron Pair, supra,* when it held that "the entire issue of interest is completely divorced from either the existence or the intent of any underlying agreement." 117 B.R. at 858–59. The circuit court went on to note that "[p]rior to the enactment of the Code, the majority of courts utilized the contract rate of interest when allowing an oversecured creditor to collect post-petition interest pursuant to § 506(b)." 958 F.2d at 75. However, since the contract at issue had both a 10% pre-default rate and an 18% default rate, the court, citing cases recognizing a flexible approach to the issue, remanded the case for an examination of the equities involved in the bankruptcy proceeding.

In *In re Kelton,* 137 B.R. 18 (Bankr. W.D.Tex.1992), the bankruptcy court followed *In re Laymon,* 117 B.R. 856 (W.D.Tex.1990), noting 1) that "the use of the federal rate yields an 'equitable solution' to the competing claims of the secured and unsecured creditor that also honors the principle of applying federal law to the payment of post petition interest," 137 B.R. at 20 (quoting *Laymon,* 117 B.R. at 864); and 2) "*Laymon* does not stand for the proposition that a higher interest rate can never be awarded...." 137 B.R. at 20.

---

1. The Court notes that the Debtors' Plan provides that unsecured creditors' claims will be satisfied through participation in the Class 4 Income Distribution Trust. The dividend payable to the Class 4 creditors according to the Debtors' Fourth Amended Disclosure Statement can range from 40% within five years to 100% over approximately ten years depending upon the class election to accept an early liquidation payment or to remain as junior lienor and receive all amounts payable over time.

The bankruptcy court considered the City of El Paso's reliance on *Meilink v. Unemployment Reserves Commission,* 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942), for the proposition that city property taxes should receive special treatment under equitable principles misplaced. 137 B.R. at 20. The court held that

> [T]here are no special equities raised by the fact that the interest claim asserted here happens to be held by a taxing authority. That the creditor is "involuntary" in the sense that no credit was intended to have been extended to this debtor does not change that creditor's position as a competing claimant for the estate's limited assets as part of the larger distribution scheme in bankruptcy.

*Id.* at 21.

Emphasizing the principle that estate assets should be equitably and ratably distributed among creditors, the Court went on to state that, if the statutory rate were applied, the City would receive a larger portion of the estate's pie, contrary to an equitable distribution scheme. *Id.*

The City relies upon *In re Russo,* 63 B.R. 335 (Bankr.D.Mass.1986), a case in which the debtor failed to pay to the Commonwealth of Massachusetts both taxes withheld from his employees' wages and income taxes. The Court confronted the issue of whether the Commonwealth was entitled to interest on its secured claim and ruled that it was. It then observed that "[a] more difficult matter is determining the appropriate rate of interest." 63 B.R. at 337. The Court noted that the issue arose in the context of a confirmed Chapter 11 plan calling for full payment of taxes and a 25% dividend to unsecured creditors. The Court also noted that the Commonwealth was imposing its 18% delinquency rate as a deterrent and a penalty. The Court ruled that "the debtor should not be allowed an advantageous interest rate for violating state law," *id.,* since "the creditors' provisions under the plan are not affected by this interest plus penalty, as this is neither a pot nor liquidation plan and, as a practical matter, will only minimally if at all, be affected by the minor impact of the inter-est payments on debtor's operations." *Id.* at 338.

Although the position advanced by the Debtors is not without appeal, the Court finds that the City's position must be sustained for several reasons. First, the rationale for the decision in *In re Kelton,* a case with close parallels to the instant case, has been undermined by the Fifth Circuit's reversal of the lower courts in *In re Laymon,* 958 F.2d 72 (5th Cir.1992). Second, the rates of interest provided by applicable statutes have been utilized by a number of courts in the absence of a rate specified for nonconsensual liens in 11 U.S.C. § 506(b). *See In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1549 (2nd Cir.1989), *cert. denied, Suffolk Co. Treasurer v. Barr,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *In re LaPiana,* 100 B.R. 998 (N.D.Ill.1989), *aff'd,* 909 F.2d 221 (7th Cir.1990); *In re Isley,* 104 B.R. 673, 680 (Bankr.D.N.J.1989). Third, the equities of the case do not compel a different result. Although the unsecured creditors' dividend may be affected by the higher rate of interest, the Trustee of the Class 4 Income Distribution Trust (formerly counsel to the unsecured creditors' committee) did not intervene to oppose the City's position, thereby permitting the inference that the dividend to unsecured creditors will not be meaningfully affected by the higher interest rate. Therefore, the rationale of the court in *In re Russo,* 63 B.R. 335 (Bankr. D.Mass.1986), resolves the instant dispute. Accordingly, the Court holds that the City of Cambridge is entitled to apply the statutory rate of interest to its oversecured tax claim. The City is directed forthwith to submit a computation of the full amount of its secured claim.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.

### ORDER

In accordance with the memorandum of July 23, 1992, the Court hereby overrules the Debtors' Opposition to the Claim of the

City of Cambridge and determines that the City of Cambridge is entitled to the statutory rate of interest on its oversecured tax claim. The City of Cambridge is hereby directed to forthwith file a revised claim reflecting the full amount of its secured claim at the statutory rate of interest. Debtor shall have 10 days thereafter to object to the appropriateness of the computation.